764 A.2d 1004

ANNE RIDING, PLAINTIFF–RESPONDENT, v. TOWNE MILLS CRAFT CENTRE, INC., A NEW JERSEY CORPORATION DOING BUSINESS AS HOUSE OF MARBLES, TEIGN VALLEY GLASS AND BOVEY POTTERY, DEFENDANT–APPELLANT, AND WILLIAM BAVIN, INDIVIDUALLY AND AS OWNER OF TOWNE MILLS CRAFT CENTRE, INC., DEFENDANT.

Argued October 10, 2000—Decided January 29, 2001.

*Stephen M. Offen* argued the cause for appellant (*Schachter, Trombadore, Offen, Stanton & Pavics*, attorneys).

*Brian M. Cige* argued the cause for respondent.

The opinion of the Court was delivered by

LaVECCHIA, J.

This appeal presents the question whether a successful age discrimination plaintiff, when seeking confirmation of an arbitrator's award, may move for counsel fees pursuant to *N.J.S.A.* 10:5–27.1, the fee-shifting provision of the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to 42. Despite plaintiff's failure to raise her claim for counsel fees during the arbitration or before the time either party could reject the award and request a trial *de novo,* a majority of the Appellate Division held in an unpublished opinion that the counsel fees request may be heard in a post-arbitration application to the trial court. The appeal is before the Court on the basis of the dissent below.

I.

In 1997, plaintiff Anne Riding filed a complaint alleging age discrimination under the LAD against Towne Mills Craft Centre,

Inc. and William Bavin. Bavin has since been dismissed from the action. Among the prayers for relief in Riding's Complaint was a claim for counsel fees. The case was selected for nonbinding arbitration under *Rule* 4:21A–1 pursuant to a pilot program operating in Somerset County. In her Arbitration Statement of the Case, plaintiff sought a total of $57,404.52 in various forms of damages. It is undisputed that neither in that Statement nor at any time during the arbitration did plaintiff or defendant raise the issue of counsel fees.

An arbitrator found in favor of plaintiff and awarded damages in the amount of $38,240. No mention was made of counsel fees in the arbitration award. Before the fiftieth day following the arbitrator's award, plaintiff moved to confirm the award and requested counsel fees and costs in the amount of $9,743.78. Defendant did not contest the confirmation but did oppose the request for fees, contending that because the issue was not placed before the arbitrator plaintiff's application was actually an attempt to modify the award beyond the thirty-day time frame for modification provided in *Rule* 4:21A–6.

The trial court confirmed the award but denied the fees, holding that plaintiff's application constituted an impermissible request for modification. Plaintiff appealed, contending that the request for fees was not a modification but merely an application for fee shifting under the LAD, to which she was entitled as a matter of law. *N.J.S.A.* 10:5–27.1.

A divided panel of the Appellate Division reversed. Citing the remedial nature of the LAD and the importance of fee shifting in discrimination suits, the Appellate Division held that plaintiff was a "prevailing party" entitled as a matter of law to counsel fees absent special circumstances to the contrary. The majority did not agree with the trial court's implicit holding that plaintiff waived fees by not raising the issue with the arbitrator. The Appellate Division analogized to federal case law allowing a statutory fee application to be made after settlement of a discrimination action, notwithstanding the settlement's silence on the issue. The

Appellate Division majority held that there was no waiver of the statutory counsel fees here, and allowed the application to be made to the trial court after confirmation of the arbitration award.

The dissenting member of the panel asserted that the majority's holding thwarted the salutary policies underlying the arbitration process. Noting that the purpose of arbitration is to save judicial resources and promote the efficient, speedy, and inexpensive adjudication of disputes, the dissent stated that the majority opinion contravened those goals in two ways. First, a defendant cannot know whether to accept or reject the arbitrator's award when the counsel-fee issue is left open until after the award is confirmed; thus, to protect himself a defendant would have to request a trial *de novo*. Also, the majority's resolution would require post-arbitration judicial proceedings, contrary to the intent of the arbitration process to conserve the expenditure of judicial resources on arbitrated disputes.

We now affirm the judgment of the Appellate Division.

## II.

### A.

This case appears to implicate two competing policies. On the one hand, we have the strong legislative policy to provide fee shifting for successful LAD claimants. On the other is the policy of encouraging prompt and efficient resolution of all disputes in a given legal controversy through our arbitration processes, thus minimizing the need to expend judicial resources on those diverted cases. The question here is not which policy prevails, but rather how to reconcile the two.

The history of our mandatory arbitration statutes for certain automobile accident claims, *N.J.S.A.* 39:6A–24 to–35, and for personal injury claims within a designated amount, *N.J.S.A.* 2A:23A–20a, as well as the Court Rules implementing those laws have been reviewed before by this Court. *Hartsfield v. Fantini*, 149 *N.J.* 611, 615–16, 695 *A.*2d 259 (1997); *see also* Pressler, *Current*

*N.J. Court Rules,* comment 1 on *R.* 4:21A–1 (2001) (discussing history of rules governing mandatory arbitration program). The success of the arbitration program over the years spawned experimentation or "pilot projects" in some vicinages that, by order, expanded the mandatory arbitration program to apply to other classes of actions. *Ibid.* Such an order was the source of authority for this case proceeding to arbitration in the Somerset vicinage in 1998.

Building on the experience gained from the various pilot projects, the amendments to the Court Rules effective September 2000 enlarged the categories of actions that are mandatorily arbitrable. Currently, nonbinding arbitration is mandatory for applicable cases in Tracks I, II, and III. *R.* 4:21A–1(a)(1), (2), and (3). Statutory fee-shifting cases, like the LAD, are not among the mandatorily arbitrable cases, but may proceed to arbitration if the parties voluntarily agree. *R.* 4:21A–1(b). Hence, the means of integrating an LAD action, including fee shifting, with the processes of nonbinding arbitration require resolution, not only for this case, but also for those LAD actions that may proceed to arbitration in the future.

### B.

Mandatory nonbinding arbitration operates under strict time frames that help guide the parties' expectations. Once a matter has been assigned for mandatory arbitration, a party must promptly seek to remove the case from that process if arbitration is not suitable for the controversy. *R.* 4:21A–1(c). After the arbitration hearing is conducted and the arbitrator's award issues, an order is entered dismissing the action unless one of the following occurs:

(1) within 30 days after filing of the arbitration award, a party thereto files with the civil division manager and serves on all other parties a notice of rejection of the award and demand for a trial de novo . . .; or

(2) within 50 days after the filing of the arbitration award, the parties submit a consent order to the court detailing the terms of settlement and providing for dismissal of the action or for entry of judgment; or

(3) within 50 days after the filing of the arbitration award, any party moves for confirmation of the arbitration award and entry of judgment thereon.

[*R.* 4:21A–6(b).]

Here, both parties allowed thirty days to expire after the arbitrator ruled in favor of plaintiff. After neither party requested a trial *de novo,* plaintiff properly moved to confirm within the fifty-day window. With the motion to confirm, plaintiff also requested an award of counsel fees, claiming that, until then, she was not a "prevailing party" entitled to fees under *N.J.S.A.* 10:5–27.1. Defendant responded that it was lulled into believing that the arbitrator's award encompassed defendant's entire liability to plaintiff, and that under typical arbitration procedures plaintiff was foreclosed from seeking to "modify" that award after the thirty days expired. See *N.J.S.A.* 2A:24–9 (setting forth limited grounds for modification or correction of an award). Plaintiff characterizes that result as allowing a rule on process to trump specific statutory rights. There is some merit to both parties' arguments.

Fee shifting is an important remedial component of the LAD, as the Appellate Division majority recognized:

LAD is remedial legislation to be given a liberal interpretation consistent with an approach sympathetic to its objective of ending discrimination. Counsel fee awards in LAD cases should be the rule rather than the exception to encourage litigants to combat discrimination in our State. Even good faith in defense of a LAD action is not a defense to a fee claim by a prevailing plaintiff.

Defendant does not dispute that plaintiff is a "prevailing party" in the context of the LAD's fee-shifting provision, *N.J.S.A.* 10:5–27.1. It is also undisputed that, at the arbitration hearing, neither party addressed the issue of fees. The arbitration award was similarly silent on the subject. Notwithstanding that the arbitration award did not consider and reject on the merits a fee request, defendant contends that plaintiff's application for fees essentially sought a "modification" of the award. The Appellate Division was not persuaded by defendant's argument that it relied on an expectation that the award comprised its entire liability to plaintiff when it allowed the time for requesting a *de novo* trial to pass. Instead, the majority concluded that plaintiff's silence about coun-

sel fees during the arbitration hearing would not be treated as a waiver of her right to seek counsel fees as a prevailing party at the time she moved to confirm the arbitration award.

## C.

Ordinarily, an arbitrator's consideration of a party's entitlement to fee shifting precludes later judicial review concerning the merits of that determination. *See, e.g., Moore v. First Bank of San Luis Obispo,* 22 *Cal.*4th 782, 94 *Cal.Rptr.*2d 603, 996 *P.*2d 706 (2000). But we note that some courts have looked at arbitrators' determinations with particular care when statutory fee-shifting provisions are involved. For example, the Southern District of New York has held that if it appears that an arbitrator clearly was presented with a mandatory fee-shifting statute and intentionally disregarded it, judicial modification of the award was warranted. *DeGaetano v. Smith Barney, Inc.,* 983 *F.Supp.* 459, 464 (S.D.N.Y. 1997) (vacating arbitration award for failure to award attorney's fees to prevailing party under Title VII when issue was clearly and correctly raised before arbitrator); *see also Halligan v. Piper Jaffray, Inc.,* 148 *F.*3d 197, 203–04 (2d Cir.1998) (applying "manifest disregard for the law" standard when reviewing and vacating arbitration award in derogation of ADEA); *see generally,* Norman S. Posner, *Judicial Review of Arbitration Awards: Manifest Disregard of the Law,* 64 *Brook. L.Rev.* 471 (1998) (reviewing adequacy of "manifest disregard of the law standard" for assurance of statutory rights in dispute subjected to arbitration). In *DeGaetano,* the court was mindful of the critical nature of the fee-shifting provision of Title VII for "uncovering, redressing, and deterring unlawful employment discrimination in the American workplace." *DeGaetano, supra,* 983 *F.Supp.* at 465. Citing the paramount nature of that policy goal embedded in the Title VII scheme, the court concluded that Smith Barney's arbitration policy, to the extent that it required the company's employee to waive her right to obtain attorney's fees as a prevailing Title VII plaintiff, was void as against public policy. *Id.* at 469.

■. The policy of facilitating private party complaints against discrimination is also firmly ensconced in the LAD with its own fee-shifting provision for prevailing parties. *Rendine v. Pantzer,* 141 *N.J.* 292, 323, 661 *A.*2d 1202 (1995) (citing *Coleman v. Fiore Bros.,* 113 *N.J.* 594, 597, 552 *A.*2d 141 (1989), and concluding that policy goals of LAD furthered by addition of contingency enhancement to statute's fee-shifting provision). Mindful of those important public policy considerations, we are loath to regard the parties' silence on the issue of counsel fees during the arbitration on the merits of plaintiff's discrimination claim, and the arbitration award's corresponding silence on the subject, as dispositive of the fee issue on the merits in the arbitration award. Thus, we are not confronted with the same question as was before the court in *DeGaetano,* because we agree with the Appellate Division that the collateral issue of fees was not presented until the time of plaintiff's motion to confirm the award.

### III.

In support of its determination not to engraft a waiver of statutory fees in the circumstances of this case, the Appellate Division majority looked to a series of Third Circuit cases establishing the rule that where a discrimination suit ends in settlement or consent judgment, a subsequent application for counsel fees is not precluded unless there is an explicit waiver of statutory fees in the settlement agreement. *See, e.g., Torres v. Metropolitan Life Ins. Co.,* 189 *F.*3d 331, 333 (3d Cir.1999) (imposing burden on losing party to show that settlement agreement clearly waived right to counsel fees); *El Club Del Barrio, Inc. v. United Community Corps.,* 735 *F.*2d 98, 99 (3d Cir.1984) (rejecting contention that omission of fee award from settlement equates to waiver of right to seek fees); *cf. Coleman v. Fiore Bros., supra,* 113 *N.J.* at 610–11, 552 *A.*2d 141 (concluding record demonstrated that statutory claims for fees were encompassed within settlement involving public interest lawyers).

We agree that the Third Circuit cases, while not entirely analogous, are illuminating in this matter of first impression. Because LAD claims involving fee shifting are not routinely included in our mandatory nonbinding arbitration program, the parties here lacked experience to inform their behavior during the arbitration. As the Appellate Division majority aptly noted:

> There is no more reason to infer a waiver of the statutory entitlement to attorney's fees from plaintiff's silence at arbitration than to infer from defendant's silence a consent to plaintiff pursuing the application after obtaining prevailing party status. Since no statutory or decisional law of court proscribes an application for counsel fees under LAD after arbitration, defendant had no reason to assume that an application for statutory fee shifting was legally foreclosed.

■ Thus, we conclude that, concerning this arbitration, the majority's determination is just. Plaintiff was not a prevailing party until the time for requesting a *de novo* trial had passed. In assessing the reasonableness of both parties' expectations, defendant's contention that it regarded the statutory fees claim waived because of plaintiff's failure to raise the issue during the hearing on the merits of her discrimination claim is less compelling than plaintiff's belief that she should press her request for fees only after she "prevailed." On balance, we agree with the majority below that plaintiff should be permitted to proceed with her fee application before the trial court. Plaintiff's statutory fee-shifting claim is distinct from the merits of her age discrimination claim, the latter shoe-horned into a nonbinding arbitration process not yet accustomed to resolving claims involving fee shifting for prevailing parties. She should not be barred from seeking fees once she became a prevailing party, and that did not occur until the time to request *de novo* review of her arbitrated claim had expired.

In so concluding, we are instructed by the approach of the United States Supreme Court in *White v. New Hampshire Department of Employment Security,* 455 *U.S.* 445, 102 *S.Ct.* 1162, 71 *L.Ed.*2d 325 (1982). In *White,* the plaintiff sued a public entity for failure to make timely determinations of certain entitlements to unemployment compensation. *Id.* at 447, 102 *S.Ct.* at 1164, 71 *L.Ed.*2d at 328. The parties eventually agreed to a settlement,

which the trial court approved. *Ibid.* The plaintiff filed a motion for attorney's fees four-and-one-half months after the entry of final judgment. *Id.* at 448, 102 *S.Ct.* at 1164, 71 *L.Ed.*2d at 329. The defendant argued that it believed its liability was fixed by the consent judgment; thus the motion constituted unfair surprise. *Ibid.* The trial court awarded the fees. *Ibid.* The First Circuit reversed, concluding that the fee petition constituted a motion to alter or amend the judgment governed by *Rule* 59(e) of the Federal Rules of Civil Procedure and its ten-day time limit. *Id.* at 448, 102 *S.Ct.* at 1164–65, 71 *L.Ed.*2d at 329.

The Supreme Court found that to be error, noting that generally federal courts "have invoked *Rule* 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits. By contrast, a request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action—issues to which Rule 59(e) was never intended to apply." *Id.* at 451, 102 *S.Ct.* at 1166, 71 *L.Ed.*2d at 330–31 (citation and footnote omitted). The Court explained that "[u]nlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial." *Id.* at 452, 102 *S.Ct.* at 1166, 71 *L.Ed.*2d at 331. Applying the ten-day limit to alter a judgment to a fee request "could yield harsh and unintended consequences." *Id.* at 452, 102 *S.Ct.* at 1167, 71 *L.Ed.*2d at 332. Furthermore, the application of the rule is not "necessary or desirable to promote finality, judicial economy, or fairness." *Ibid.*

As did the dissent below, the United States Supreme Court noted its concern about the potential for surprise to a settling defendant. However, the Court responded that a trial court's discretion

will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party. Moreover, the district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees. And of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits.

[*Id.* at 454, 102 *S.Ct.* at 1167–68, 71 *L.Ed.*2d at 333 (footnotes omitted).].

*White* is instructive because it notes that requests for attorney's fees are "uniquely separable" from those issues to be proved at trial on the merits. Furthermore, *White* observes that federal rules promulgated for the amendment of judgments were not meant to apply to attorney fee petitions. A similar argument can be made here that the application of arbitration confirmation and award modification standards are ill-suited to a civil rights statute that provides for fee shifting to a prevailing party.

Moreover, when applying the arbitration rules, the mechanism for adjudicating a prevailing party fee-shifting claim is unclear. *Rule* 4:42–9(d) mandates that "[a]n allowance of fees made on the determination of a matter shall be included in the judgment or order stating the determination." That rule has been interpreted to mean that "an application for the allowance of attorney's fees in a case governed by that rule has to be presented before the entry of the final judgment or, possibly, at the latest, within ten days thereafter by a motion to alter or amend the judgment." *Czura v. Siegel,* 296 *N.J.Super.* 187, 190, 686 *A.*2d 390 (App.Div.1997). Whether the "final judgment" referenced in *Rule* 4:42–9(d) refers to the arbitrator's award or the confirmation of the arbitration award is debatable.

*N.J.S.A.* 2A:23A–26 provides that once a court confirms an arbitrator's award, that confirmation "shall have the same effect as a judgment in any other action." When read in conjunction with *Rule* 4:42–9(d), *N.J.S.A.* 2A:23A–26 could be regarded as implying that plaintiff acted timely within the dictates of *Rule* 4:42–9(d) by submitting her claim for fees at the same time that she filed her motion to confirm the arbitrator's award. Under that analysis, the trial court had the power to act on the petition before confirming the award.

In summary, we affirm the majority's determination to reverse and remand to the trial court the issue of the reasonableness of plaintiff's counsel fee request. We do so having been informed at oral argument that defendant did not wish to recommence the

arbitration process. Accordingly, we remand this matter solely for the resolution of the counsel fee application. The issue of prevailing-party fees under *N.J.S.A.* 10:5–27.1 had not been presented to or resolved by the arbitrator. We do not view the request for fees as an attempt to modify the award. In this case, it represented a separate and collateral issue that had not been waived by plaintiff.

## IV.

This case involved nonbinding arbitration. We note that in binding arbitration, arbitrators resolve all issues in an arbitrated claim, which may include fee-shifting claims. *See N.J.S.A.* 2A:23A–17 ("When the agreement for alternative resolution expressly provides, the umpire may provide for payment of attorney's fees.").

In the future, in nonbinding arbitration, statutory fee-shifting issues will be reserved for court resolution unless the parties otherwise agree to submit the fee demand to the arbitrator. A successful litigant in an arbitration inevitably must return to court to confirm an award, and the trial court would then be responsible for ruling on the reasonableness of an LAD prevailing-party's fee request if the parties had not submitted the request by mutual consent to the arbitrator. Accordingly, for LAD cases voluntarily submitted to nonbinding arbitration under our recent Rule amendments, the trial court will resolve a prevailing party's request for fees under the LAD fee-shifting provision unless the parties agree to submit the issue to the arbitrator.

Even when the issue is reserved for the trial court, a defendant reviewing an arbitration award need not be prejudiced in assessing the potential extent of its fee liability. Attorneys generally are able to estimate an adversary's fee request. If necessary, the parties to the arbitration would not be precluded from seeking abbreviated discovery to facilitate an estimate of the amount of a potential fee award in the event the arbitrator were to

conclude in favor of the plaintiff. Thus, when considering whether to seek a *de novo* trial following issuance of an arbitrator's award involving a LAD claim, a defendant would be armed with an understanding of the likely fee award to the prevailing plaintiff. No unfairness would be visited upon a defendant in such circumstances.

The judgment of the Appellate Division is affirmed.

VERNIERO, J., concurring in part, dissenting in part.

I agree with the underlying premise of the Court's holding, namely, that plaintiffs who successfully arbitrate their discrimination complaints are entitled to seek reasonable counsel fees. I differ from my colleagues only insofar as how to implement that holding. In my view, the Court should encourage arbitrators to resolve fee applications rather than reserve that function exclusively for the Law Division unless the parties agree otherwise.

The salutary purpose of New Jersey's arbitration system is to adjudicate disputes efficiently and inexpensively "and to ease the caseload of state courts." *Behm v. Ferreira,* 286 *N.J.Super.* 566, 574, 670 *A.*2d 40 (App.Div.1996). Consistent with that purpose, arbitrators have proved themselves to be skilled in resolving complaints, and I see no reason why those same professionals should not decide the question of fees. In the binding arbitration setting, the Court acknowledges the practice of arbitrators determining fee awards, *ante* at 233, 764 *A.*2d at 1010; yet, it divorces them from that function in the non-binding setting unless the parties affirmatively agree to submit the fee question to arbitration. I do not believe that the differences between the two forms of arbitration are so great as to warrant those separate procedures.

Whether in the context of a binding or non-binding system, arbitrators develop a "feel of the case" much like trial judges in the Law Division and are thus in an excellent position to determine the reasonableness of any fee award. Having witnessed firsthand the legal services rendered in a particular matter, arbi-

trators are uniquely infused "with a fresh personal knowledge of the issues involved[.]" *Cone v. W. Va. Pulp & Paper Co.*, 330 *U.S.* 212, 216, 67 *S.Ct.* 752, 755, 91 *L.Ed.* 849, 852 (1947). That unique perspective is lost once the matter is transferred.

The majority correctly describes this case as one of first impression, *ante* at 231, 764 *A.*2d at 1009, and acknowledges that there is merit to the argument on both sides, *id.* at 228, 764 *A.*2d at 1007. Under those circumstances, I would not impose a holding that governs all future cases. Rather, because this matter arose by virtue of a pilot program in one county, I would seek input from the program's designers before passing on prospective procedures. In sum, I would remand this matter to the arbitrator to consider plaintiff's fee application. The Court's holding should not be carved in stone until program designers and other interested parties have had the opportunity to offer us their views.

LONG, J., joins in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LaVECCHIA and ZAZZALI—5.

*Concurring in part/dissenting in part*—Justices LONG and VERNIERO—2.