OPINION OF THE COURT
Michael F. Mullen, J.
*917 A crucial issue has arisen in this capital case, viz., whether the defendant can waive his right to offer mitigation in the sentencing proceeding. It appears this issue has not yet been addressed by any New York court.
One of the arguments of defense counsel is that there is a “public interest” here, a societal interest, as it were, which overrides a defendant’s right to waive the opportunity to offer mitigation. The defense claims that to allow the defendant, Stephen Lavalle, to forego any mitigation would, in effect, result in a court-assisted suicide.
In support, the defense attorneys rely on the holding of the highest court in New Jersey in State v Koedatich (112 NJ 225, 548 A2d 939 [1988]; see also, Lenhard v Wolff, 444 US 807, 808 [1979] [Marshall, J., dissenting]). While this court agrees that Koedatich does support defense counsel’s argument, I conclude it does not control the situation at bar, because the New Jersey death penalty statute is essentially different from New York’s. For one thing, the New Jersey statute allows a defendant facing a murder, first degree, prosecution to waive his right to a jury trial, and/or plead guilty to murder, first degree, and still face the possibility of the death penalty. That cannot happen in New York.
Further, the New Jersey statute provides that “the defendant shall have the burden of producing evidence of the existence of any mitigating factor set forth in paragraph (5) of this subsection” (NJ Rev Stat § 2C:11-3 [c] [2] [a] [emphasis added]).
In contrast, the New York statute provides “the defendant may present any evidence relevant to any mitigating factor set forth in subdivision nine of this section” (CPL 400.27 [6] [emphasis added]).
Also, in the sentencing phase, in New Jersey, “[i]f the jury or court finds that any aggravating factors exist and that all of the aggravating factors outweigh beyond a reasonable doubt all of the mitigating factors, the Court shall sentence the defendant to death” (NJ Rev Stat § 2C:ll-3 [c] [3] [a] [emphasis added]; see also, NJ Rev Stat § 2C:ll-3 [c] [1]). There is no safety hatch. The death sentence must be imposed.
Again, that cannot happen in New York, because even if the jury unanimously finds beyond a reasonable doubt that the aggravating factor(s) substantially outweigh the mitigating factors, there is a second step. The jury must also find, unanimously, that the death penalty is the appropriate sentence to be imposed in the particular case (CPL 400.27 [11] [a]).
*918 Finally, evidence supporting the existence of a mitigating factor in New York may come from the guilt phase, as well as the sentencing phase, and may be produced by the People or the defendant.
This court concludes that under the New York statute, and case law, defendant Stephen Lavalle has the right to waive the opportunity to offer mitigating factors at his sentencing proceeding.
The decision whether to offer mitigation is one of those “fundamental decisions” which a defendant himself retains during the pendency of his case, similar to the right to decide whether to plead guilty, whether to waive a jury trial, whether to testify in his own behalf, and, in noncapital cases, whether or not to appeal. It is not simply a question of trial strategy, which would be left to the attorney (see, People v Petrovich, 87 NY2d 961; People v Colon, 90 NY2d 824). Perhaps, if mitigating factors are being offered, who to call or what to offer are decisions best left to the attorney. But the decision of whether to offer mitigation at all lies with the client (see also, State v Ashworth, 85 Ohio St 3d 56, 706 NE2d 1231 [1999]; Zagorski v State, 983 SW2d 654 [Tenn 1998]; Gilmore v Utah, 429 US 1012 [1976]).
The next question is whether defendant Stephen Lavalle is competent to waive the right to offer mitigation. In raising this question, the defense attorneys are impliedly arguing that the waiver of his right is more profound in the context of a capital case, and a higher standard of “competency” is required. That argument was rejected by the United States Supreme Court in Godinez v Moran (509 US 389 [1993]).
In that case, the defendant Moran pleaded not guilty to three counts of murder, first degree, and two psychiatrists found him competent to stand trial. At that point, he advised the Nevada trial court that he wished to discharge his attorneys and plead guilty. His reason for doing so was to prevent the presentation of mitigating evidence at his sentencing. That is exactly what the defendant Lavalle wants to do.
In Godinez (supra), the trial court found that Moran understood the charges against him, was able to assist in his defense, was knowingly and intelligently waiving his right to counsel, and his guilty pleas were freely and voluntarily given. He was sentenced to death, and the Supreme Court of Nevada subsequently dismissed his appeal (103 Nev 138, 734 P2d 712).
However, he thereafter sought Federal habeas corpus relief. The Federal District Court denied his petition, but the Court of Appeals for the Ninth Circuit reversed (972 F2d 263).
*919 The Circuit Court of Appeals concluded that due process required the trial court to hold a hearing to evaluate Moran’s competency before allowing him to waive counsel and plead guilty. It also held that the trial court’s ruling was premised on the wrong legal standard because competency to waive constitutional rights requires a higher standard of mental functioning than that required to stand trial.
The United States Supreme Court reversed the Circuit Court of Appeals, and in so doing, made several observations, which are relevant at bar.
First, it acknowledged that simply being competent to stand trial is not enough. The trial court must satisfy itself that the waiver of the constitutional right is knowing and voluntary. Does the defendant understand the significance of what he is doing, and is his decision uncoerced?
The Supreme Court then made clear that the competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial.
The focus of the competency inquiry is the defendant’s mental capacity. Does he have the ability to understand the proceedings, and what he is doing, i.e., the significance and consequences of what he is doing?
Finally, the Supreme Court observed that the decision to plead guilty, though profound, is no more complicated than the sum total of decisions that a defendant may have to make during the course of a trial, e.g., whether to testify, etc. The decision to plead guilty does not require an appreciably higher level of mental functioning than the decision to waive other constitutional rights — and this should include the right to offer mitigation.
In Godinez {supra), the defendant was giving up his right to counsel. He wanted to proceed pro se in a death penalty case. The defendant may have been incapable of acting as his own attorney, but that did not mean he was not competent to waive his right to counsel.
At bar, nothing has been offered to the court to suggest that defendant suffers from any mental or psychological impairment. There has never been any question raised about his competency to stand trial.
In fact, everything that this court has seen and heard for the past year points clearly to the conclusion he is competent to waive his right to offer mitigation. We have had lengthy hearings, extended voir dire, protracted interaction with prospec *920 tive jurors, and more than three weeks of trial testimony. Defendant was alert and attentive at all times. He took copious notes. He continuously conferred with counsel, both prior to proceeding each day and in the courtroom. There was not one outburst.
The court also had to engage in extensive dialogue with the defendant on more than one occasion. His demeanor was respectful, and his responses thoughtful and appropriate. At the conclusion of jury selection, defendant advised the court that he could not proceed to trial with the attorney who was acting as lead counsel at that time. The court was convinced that this was not a dilatory tactic, and that defendant’s reasons for removing counsel were valid.
New counsel, Charles Von Schmidt, Esq., was assigned, and Martin Efman, Esq., who had been associate counsel, took over as lead counsel. The trial proceeded without serious interruption or disruption. Defendant was cooperative at all times.
This court has no reason whatsoever to doubt that defendant is competent to make the decision he seeks to make now: to waive the offering of mitigation. He is competent in every sense of the word. He understands the significance and consequences of what he is doing. While some might question why a person would do what defendant wants to do, no one should question his right to do it. It is his decision, and no one else’s. He is free to disregard the advice of his attorneys and others.
As stated above, nothing has been offered to raise any question in the court’s mind as to defendant’s competency to waive his right to offer mitigation. I have seen and heard defendant, first hand, literally, for months. There is simply no reason to order a hearing.