[928 NE2d 383, 902 NYS2d 1]

In the Matter of LORRAINE C. BRADY, Respondent, v THE WIL-
LIAMS CAPITAL GROUP, L.P., Appellant, and AMERICAN ARBI-
TRATION ASSOCIATION, INC., Respondent.

Argued February 10, 2010; decided March 25, 2010

460

**POINTS OF COUNSEL**

*Schiff Hardin LLP*, New York City (*Marc L. Silverman* and *M. Eleanor Ignacio* of counsel), for appellant. I. The Appellate Division majority erred by severing the cost-sharing provision instead of invalidating the agreement. (*Szigyarto v Szigyarto*, 64 NY2d 275; *Puderbaugh v State Empls. Fed. Credit Union*, 276 AD2d 992; *Recovery Consultants v Shih-Hsieh*, 141 AD2d 272; *Misicki v Caradonna*, 12 NY3d 511; *Matter of Wilson*, 50 NY2d 59; *Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ.*, 489 US 468; *Shankle v B-G Maintenance Mgt. of Colo., Inc.*, 163 F3d 1230; *Matter of Schreiber v K-Sea Transp. Corp.*, 9 NY3d 331;

*Mazera v Varsity Ford Mgt. Servs., LLC,* 565 F3d 997; *Phillips v Associates Home Equity Servs., Inc.,* 179 F Supp 2d 840.) II. The Appellate Division majority erred when it determined that the cost-sharing provision of the agreement violated public policy because Lorraine Brady failed to demonstrate that the cost-sharing provision prohibits her from vindicating her statutory rights. (*Green Tree Financial Corp.-Ala. v Randolph,* 531 US 79; *Bradford v Rockwell Semiconductor Sys., Inc.,* 238 F3d 549; *Howard v Anderson,* 36 F Supp 2d 183; *Rollins, Inc. v Foster,* 991 F Supp 1426; *Matter of Schreiber v K-Sea Transp. Corp.,* 9 NY3d 331; *Arakawa v Japan Network Group,* 56 F Supp 2d 349; *James v McDonald's Corp.,* 417 F3d 672; *Knolls Coop. Section No. 2 v Evans Dev. Corp.,* 169 AD2d 690; *Hooters of Am., Inc. v Phillips,* 173 F3d 933; *Rosenberg v Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F3d 1.)

*Law Offices of William H. Roth,* New York City (*William H. Roth* of counsel), for respondent. I. Lorraine Brady properly raised the argument that public policy prohibited the imposition of arbitrator's fees at the trial court and preserved that issue for appellate review. (*Gilmer v Interstate/Johnson Lane Corp.,* 500 US 20; *805 Third Ave. Co. v M.W. Realty Assoc.,* 58 NY2d 447; *Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276; *Szigyarto v Szigyarto,* 64 NY2d 275; *Puderbaugh v State Empls. Fed. Credit Union,* 276 AD2d 992; *Recovery Consultants v Shih-Hsieh,* 141 AD2d 272; *Misicki v Caradonna,* 12 NY3d 511.) II. Public policy is violated when an employee is compelled to pay $21,150 in order to adjudicate a claim of employment discrimination. (*Circuit City Stores, Inc. v Adams,* 532 US 105; *Credit Suisse First Boston Corp. v Pitofsky,* 4 NY3d 149; *Matter of Schreiber v K-Sea Transp. Corp.,* 9 NY3d 331; *Green Tree Financial Corp.-Ala. v Randolph,* 531 US 79; *Matter of Teleserve Sys. [MCI Telecom. Corp.],* 230 AD2d 585; *Shankle v B-G Maintenance Mgt. of Colo., Inc.,* 163 F3d 1230; *Spinetti v Service Corp. Intl.,* 324 F3d 212; *Howard v Anderson,* 36 F Supp 2d 183; *Cole v Burns Intl. Sec. Servs.,* 105 F3d 1465; *Bradford v Rockwell Semiconductor Sys., Inc.,* 238 F3d 549.) III. A party cannot be relieved of its obligation to comply with the rules of an adjudicatory body it has selected. (*Kashner Davidson Sec. Corp. v Mscisz,* 531 F3d 68; *Matter of Warner Bros. Records [PPX Enters.],* 7 AD3d 330; *Ling Ling Yung v County of Nassau,* 77 NY2d 568.)

JONES, J.

At issue is whether petitioner met her burden of demonstrating that an arbitration agreement's provision for the equal sharing of arbitration fees and costs precluded petitioner from pursuing her statutory rights in the arbitral forum. Because neither lower court made a finding regarding petitioner's financial ability, we remit this matter to Supreme Court for a hearing to determine, in light of the standard we enunciate today, whether petitioner was financially able to share equally in the arbitration fees and costs.

On January 19, 1999, respondent The Williams Capital Group, L.P. (Williams), an investment bank and broker-dealer of debt and equity securities, hired petitioner to sell fixed income securities. As a representative of respondent Williams, petitioner was required to execute a Uniform Application for Securities Industry Registration or Transfer (Form U-4) in order to become registered with the National Association of Securities Dealers (NASD). Accordingly, petitioner, a "registered" salesperson of fixed income securities, was subject to NASD rules. Under NASD rule 10201 (b), for example, "[a] claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose."

In 2000, respondent Williams promulgated an employee manual that all of its employees, including petitioner, were required to sign and abide by as a condition of continued employment. Incorporated within the employment manual was a "MUTUAL AGREEMENT TO ARBITRATE CLAIMS" (Arbitration Agreement or Agreement) under which respondent Williams and each of its employees agreed (1) that all disputes were to be arbitrated (so that the parties would enjoy "the benefits of a speedy, impartial dispute-resolution procedure") and (2) to equally share the fees and costs of the arbitrator. At the time the Arbitration Agreement was entered into, its "equal share" provision was consistent with respondent American Arbitration Association's (AAA) rules (which provided that parties to an AAA arbitration would share the cost of the arbitrator's fee). The Agreement includes the following provision:

> "The Company and I agree that, *except as provided in this Agreement*, any arbitration shall be in

accordance with the then-current Model Employment Arbitration Procedures of the [AAA] before an arbitrator who is licensed to practice law in the state in which the arbitration is convened ('the Arbitrator'). The arbitration shall take place in or near the city in which I am or was last employed by the Company" (emphasis added).

On February 28, 2005, respondent Williams terminated petitioner's employment. During each year in the employ of respondent Williams, petitioner earned $100,000 or more. Specifically, she earned $100,000 in 1999, $137,500 in 2000, $324,000 in 2001, $356,000 in 2002, $405,000 in 2003 and $204,691 in 2004.

Initially, after petitioner's termination, neither respondent Williams nor petitioner sought to compel arbitration. Petitioner, instead, filed a discrimination complaint with the New York State Division of Human Rights (DHR). For a time, she and respondent Williams conducted discovery in that forum. However, after approximately eight months, and before any decision was rendered by DHR, petitioner voluntarily withdrew her complaint.

On December 22, 2005, petitioner filed a demand for arbitration with respondent AAA, seeking money damages against respondent Williams. Petitioner claimed that respondent Williams terminated her employment based on her race and/or sex in violation of title VII of the Civil Rights Act of 1964, article 15 of the New York State Executive Law and title 8 of the Administrative Code of the City of New York (Civil Rights Law). At the time petitioner filed the demand, the AAA rules, which were amended in 2002, required employers to pay all arbitration expenses and the arbitrator's compensation (referred to as the AAA's "employer-pays" rule).

Approximately two weeks later, respondent AAA, by letter, notified the parties of its determination that the dispute arose from an "Employer Promulgated Plan," and that the arbitration would be conducted consistent with respondent AAA's National Rules for the Resolution of Employment Disputes (National Rules). For example, under National Rules § 1,

"[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] or under its National Rules for the Resolution of

Employment Disputes. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules."

On or about March 30, 2006, respondent AAA, in accordance with its "employer-pays" rule, sent respondent Williams an invoice/statement for $42,300, which represented the entire advance payment for the arbitrator's compensation. Citing the Arbitration Agreement, respondent Williams refused to pay the entire amount of the arbitrator's compensation, and demanded that petitioner pay half in accordance with the Arbitration Agreement. Petitioner refused to make any payment.

Subsequently, respondent AAA, citing its rules, advised the parties that petitioner's position was accurate. After numerous attempts to secure full payment of the arbitrator's fee from respondent Williams, the AAA cancelled the arbitration on or about October 5, 2006.

By verified petition dated October 2, 2006, petitioner commenced this CPLR article 78 proceeding seeking to compel respondent Williams to pay the arbitrator's fee or to compel respondent AAA to enter a default judgment against Williams for failing to do so. Supreme Court dismissed the petition in its entirety, holding that the parties' Arbitration Agreement, rather than the AAA rules, governed. In addition, the court, citing petitioner's earnings while she was employed by respondent Williams, rejected the argument that requiring petitioner to pay half of the arbitrator's compensation ($21,150) was prohibitively expensive.

In a 3-2 decision, the Appellate Division reversed and directed respondent Williams to pay the entire arbitration fee "subject later to reallocation of those costs by the arbitrator" (64 AD3d 127, 138 [2009]). Although the majority agreed with Supreme Court that the AAA rules did not supercede the Arbitration Agreement, they held that the "equal share" provision of the Agreement was unenforceable as against public policy. In so holding, the majority found that petitioner met her burden of establishing that the arbitration fees and costs were so high as to discourage her from vindicating her state and federal statutory rights in the arbitral forum. Finally, the majority, noting that the State favors arbitration, concluded it was proper to sever the "equal share" provision rather than void the entire agreement.

According to the dissenting Justices, because petitioner "failed to present any facts bearing on . . . the extent of her financial resources and the extent to which the costs . . . she would incur[—]if the ['equal share'] provision were enforced[—] would exceed the costs she would incur if she litigated her claims in court," she was not entitled to a ruling that the "equal share" provision was unenforceable on public policy grounds (*id*. at 139). Alternatively, the dissenters argued that even if the provision is unenforceable, the proper remedy was to disregard, not modify, the Arbitration Agreement.

Respondent Williams appeals as of right pursuant to CPLR 5601 (a). We now modify the order of the Appellate Division and remit to Supreme Court for a hearing concerning petitioner's financial ability.

At the outset we agree with the lower courts that the terms of the parties' Arbitration Agreement, rather than the AAA rules, controlled. In addition, we note (1) "arbitration is a creature of contract, and it has long been the policy of this State to interfere as little as possible with the freedom of consenting parties in structuring their arbitration relationship" (*Credit Suisse First Boston Corp. v Pitofsky*, 4 NY3d 149, 155 [2005] [citation and internal quotation marks omitted]) and (2) "[t]he court's role is limited to interpretation and enforcement of the terms agreed to by the parties" (*Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith*, 85 NY2d 173, 182 [1995]). Here, the lower courts, in determining the enforceability of the Arbitration Agreement's fee and cost sharing provision, erred.

Specifically, in passing on the question before this Court, Supreme Court focused on the petitioner's earnings during her years in respondent Williams's employ, but did not inquire as to whether petitioner could pay her share of the arbitrator's fee or whether requiring petitioner to share such costs could preclude her from pursuing her statutory rights in the arbitral forum. The Appellate Division, on the contrary, focused on the fact that petitioner was unemployed for 18 months at the time this article 78 proceeding was commenced and the amount of her share of the arbitration fees and costs under the Agreement.

Although these facts are important, they fail to resolve the question whether petitioner was financially able to share the arbitration costs. Despite their efforts, neither lower court took into account all of the criteria we find relevant in resolving the "financial ability" question. Thus, in reaching their respective

conclusions regarding the enforceability of the "equal share" provision, the lower courts erred as a matter of law.

On the other hand, this Court has never previously set forth the appropriate basis to address the issue the lower courts grappled with. We do so now and remit to Supreme Court for a hearing in accordance with this approach. In determining the relevant factors a court must take into account, we find it useful to consider how the federal courts have resolved this query.

In *Gilmer v Interstate/Johnson Lane Corp.* (500 US 20 [1991]), petitioner sued his former employer for age discrimination. In holding that petitioner's claim was subject to compulsory arbitration pursuant to an arbitration agreement incorporated in a securities registration application, the United States Supreme Court reasoned: (1) statutory claims can be subject to mandatory arbitration agreements (*see* 500 US at 35); (2) such agreements are enforceable because the arbitral forum, through which statutory claims can be resolved, provides an adequate alternative to litigation in court (*id.* at 28); and (3) "[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function" (500 US at 28, quoting *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.*, 473 US 614, 637 [1985]).

Nearly a decade later the Supreme Court decided *Green Tree Financial Corp.-Ala. v Randolph* (531 US 79 [2000]). In *Green Tree*, the Supreme Court, applying *Gilmer*, recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum" (531 US at 90), a result which cuts against the broad public policy in favor of arbitration. Further, the Supreme Court adopted a case-by-case approach by ruling that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring [the] costs" that would deter the party from arbitrating the claim (*id.* at 92). Although the *Green Tree* Court did not set forth a standard of how detailed a showing the party seeking to invalidate an arbitration agreement must make, the Court held the "risk" of "prohibitive costs is too speculative to justify the invalidation of an arbitration agreement" (*id.* at 91).

Taking a cue from *Gilmer* and *Green Tree*, the United States Court of Appeals for the Fourth Circuit decided *Bradford v*

*Rockwell Semiconductor Sys., Inc.* (238 F3d 549 [2001]), a case involving a fee-splitting provision similar to the provision at issue here. In *Bradford*, the issue was whether a mandatory arbitration agreement's fee-splitting provision, which required an employee to share the arbitration costs, renders the agreement unenforceable as a matter of law. The Fourth Circuit, consistent with the teachings of *Green Tree*, answered in the negative, holding that questions as to a fee-splitting provision's enforceability should be resolved on a case-by-case basis and that the analysis should focus on "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims" (*Bradford*, 238 F3d at 556).

In adopting the standard New York courts are to apply in resolving the question of a litigant's financial ability, we are mindful of the strong state policy favoring arbitration agreements and the equally strong policy requiring the invalidation of such agreements when they contain terms that could preclude a litigant from vindicating his/her statutory rights in the arbitral forum. We believe that the case-by-case, fact-specific approach employed by the federal courts (*see e.g. Bradford*; *Morrison v Circuit City Stores, Inc.*, 317 F3d 646 [6th Cir 2003]; *Spinetti v Service Corp. Intl.*, 324 F3d 212, 218 [3d Cir 2003]), as well as the principles set forth in *Gilmer* and *Green Tree*, properly acknowledges and balances these competing policies.

■ Based on the foregoing, we hold that in this context, the issue of a litigant's financial ability is to be resolved on a case-by-case basis and that the inquiry should at minimum consider the following questions: (1) whether the litigant can pay the arbitration fees and costs; (2) what is the expected cost differential between arbitration and litigation in court; and (3) whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum (*see Bradford*, 238 F3d at 556). Although a full hearing is not required in all situations, there should be a written record of the findings pertaining to a litigant's financial ability. Finally, we do not see the need to detail the precise documentation a court should request to resolve this issue. Such matters are best left to the court's discretion.

■ Because we are remitting this matter for a hearing, we do not decide what the remedy should be if the "equal share" provision is found unenforceable. If that happens, Supreme Court

should decide, in the first instance, whether to sever the clause and enforce the rest of the Arbitration Agreement, or to offer petitioner a choice between accepting the "equal share" provision or bringing a lawsuit in court.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order modified, etc.