[61 NYS3d 767]

WILLIAM SCHIFERLE, Appellant, v CAPITAL FENCE CO., INC., Respondent.

Fourth Department, October 6, 2017

**APPEARANCES OF COUNSEL**

*Barclay Damon, LLP*, Buffalo (*Michael E. Ferdman* of counsel), for appellant.

*Law Office of Ralph C. Lorigo*, West Seneca (*Jon F. Minear* of counsel), for respondent.

**OPINION OF THE COURT**

NeMoyer, J.

When an employee prevails on a wage nonpayment claim under article 6 of the Labor Law, "the court shall allow such employee to recover . . . all reasonable attorney's fees" (§ 198 [1-a]). We hold that a wage claimant may, in certain circumstances, validly waive their statutory right to attorney's fees under section 198. And because this case presents a textbook instance of such a valid waiver, there is no basis to upset the challenged arbitration award.

## Facts

The material facts are uncontested. Plaintiff worked as a salesman for defendant Capital Fence Co., Inc., a small business owned by plaintiff's brother. A dispute subsequently erupted regarding the amount of commissions that defendant owed plaintiff. Plaintiff sued defendant in Supreme Court, asserting common-law causes of action for breach of contract and unjust enrichment. Plaintiff also asserted a statutory wage nonpayment claim under Labor Law article 6. Defendant answered, and discovery ensued. The parties later agreed to resolve "this matter . . . through binding arbitration, pursuant to CPLR Article 75," and they executed an arbitration agreement. This appeal centers around paragraph 9 of the arbitration agreement, which says in relevant part: "The parties shall bear their own costs and attorneys' fees related to the arbitration. However, this provision does not prevent the arbitrator from awarding reasonable legal fees to [plaintiff] based on Labor Law, Article 6, as demanded in the amended complaint, including reasonable legal fees related to the arbitration."

Following an arbitration hearing, the arbitrator rendered a comprehensive decision finding in plaintiff's favor on his Labor Law article 6 wage claim and awarding him the sum of $40,942.54 in "unpaid earned commissions." The arbitrator refused to grant plaintiff any pre-award interest, however, and he further "decline[d] to award attorney's fees."

Plaintiff thereafter moved in Supreme Court to vacate and/or modify the arbitrator's award insofar as it denied pre-award interest and attorney's fees (*see generally* CPLR 7511). Noting that a successful plaintiff "in a Labor Law Article 6 [wage] claim is automatically entitled to attorney's fees by the express language of Labor Law § 198 (1-a)" as well as to "pre-judgment

interest under CPLR 5001 (a)," plaintiff argued that the arbitrator, by "treating awards of pre-judgment interest and attorney's fees as discretionary . . . and declining to award them, . . . acted in manifest disregard of well-established law and undermined the strong and well-defined public policy considerations of Article 6 of the Labor Law." Supreme Court denied plaintiff's motion and confirmed the arbitration award.

Plaintiff appeals, and we now affirm.

## Discussion

### I

Arbitration is a creature of contract, and arbitrators draw their power from the consent of the arbitrants, not from the sovereignty of the State. It is thus "well settled that judicial review of arbitration awards is extremely limited" (*Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 NY3d 471, 479 [2006], *cert dismissed* 548 US 940 [2006]). Indeed, "courts are obligated to give deference to the decision of the arbitrator . . . even if the arbitrator misapplied the substantive law" (*Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]). An arbitration award is not immune from judicial scrutiny, however, and it will be vacated if, inter alia, the arbitrator "exceeded his power" (CPLR 7511 [b] [1] [iii]; *see also* 9 USC § 10 [a] [4] [same provision in Federal Arbitration Act]). An arbitrator can exceed his or her power in a variety of ways, three of which are relevant to this appeal.

*First*, an arbitrator exceeds his or her power by transgressing a "specifically enumerated limitation" on their authority (*New York City Tr. Auth.*, 6 NY3d at 336). The most obvious example of such a transgression occurs when the arbitrator expands his or her subject matter jurisdiction in direct contravention of the terms of the governing arbitration agreement (*see e.g. Matter of Local 2841 of N.Y. State Law Enforcement Officers Union, AFSCME, AFL-CIO [City of Albany]*, 53 AD3d 974, 976 [2008] ["the arbitrator exceeded his power in amending the terms of the CBA . . . in contravention of an expressed term of the CBA which prohibited amending, modifying or deleting any provision thereof"]; *Matter of Albany County Sheriffs Local 775 of N.Y. State Law Enforcement Officers Union, Dist. Council 82, AFSCME, AFL-CIO [County of Albany]*, 27 AD3d 979, 980-981 [2006] [arbitral award properly

vacated where arbitrator, "in effect, made a new contract for the parties" in contravention of explicit provision of arbitration agreement which denied arbitrator power to "alter, add to or detract from the CBA" (internal quotation marks omitted)]). A specifically enumerated restriction upon the arbitrator's power can also arise by negative implication from the arbitration agreement (*see Matter of Hunsinger v Minns*, 197 AD2d 871, 871 [1993]). In *Stolt-Nielsen S. A. v AnimalFeeds Int'l Corp.* (559 US 662 [2010]), for instance, the United States Supreme Court held that an agreement by specified parties to arbitrate their commercial disputes on a bilateral basis necessarily precluded the arbitrator from compelling the parties to submit to binding class arbitration (*see id.* at 684-687). A specifically enumerated restriction on the arbitrator's power can arise even from a source wholly independent of the arbitration agreement itself, such as when a statute "requires the arbitrator to consider and determine the merits of [a particular issue] where such [issue] is raised" (*Matter of Kowaleski [New York State Dept. of Correctional Servs.]*, 16 NY3d 85, 91 [2010] [applying Civil Service Law § 75-b (3) (a)]).

*Second,* an arbitrator exceeds his or her power by rendering an award that contravenes a "strong public policy" of this State (*Hackett v Milbank, Tweed, Hadley & McCloy*, 86 NY2d 146, 155 [1995] [internal quotation marks omitted]). Indeed, " 'it is the established law in this State that an award which is violative of public policy will not be permitted to stand' " (*Matter of Buffalo Police Benevolent Assn. [City of Buffalo]*, 4 NY3d 660, 664 [2005], quoting *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 630 [1979]). An arbitral award violates public policy when, inter alia, it "creates an *explicit* conflict with other laws and their attendant policy concerns" (*Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 327 [1999]). Contrary to defendant's contention, the Court of Appeals did not hold in *Sprinzen* that an arbitral award is categorically immune from vacatur on public policy grounds unless it involved "punitive damages, [the] antitrust laws, claims concerning liquidating insolvent insurance companies, and certain matters involving public schools." As the *Sprinzen* Court repeatedly stated, those categories were merely "examples" and "illustrations of instances where courts will intervene in the arbitration process" in order to vindicate public policy (46 NY2d at 630-631).

*Third*, an arbitrator exceeds his power when he "manifestly disregard[s]" the substantive law applicable to the parties' dispute (*Wien & Malkin LLP*, 6 NY3d at 480-481).

> "To modify or vacate an award on the ground of manifest disregard of the law, a court must find 'both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case' " (*id.* at 481, quoting *Wallace v Buttar*, 378 F3d 182, 189 [2004]; *see Transparent Value, L.L.C. v Johnson*, 93 AD3d 599, 601 [2012] [recapitulating standard]; *see e.g. Matter of Kingdon Capital Mgt., LLC v Kaufman*, 110 AD3d 648, 648 [2013], *lv denied* 22 NY3d 861 [2014] [recognizing and applying manifest disregard standard]; *Matter of WBP Cent. Assoc., LLC v Deco Constr. Corp.*, 44 AD3d 781, 781 [2007] ["In a proceeding pursuant to CPLR article 75 . . . (a)n award made by an arbitration panel will not be vacated for errors of law or fact committed by the arbitrators *unless the award exhibits a manifest disregard of the law*" (emphasis added)]).[1]

The manifest disregard standard is, admittedly, a controversial one (*compare Comedy Club, Inc. v Improv W. Assoc.*, 553 F3d 1277, 1290 [2009], *cert denied* 558 US 824 [2009], *with Affymax, Inc. v Ortho-McNeil-Janssen Pharms., Inc.*, 660 F3d 281, 285 [2011], *and Matter of Banc of Am. Sec. v Knight*, 4 Misc 3d 756, 760-763 [2004]), but we think the controversy is unwarranted. Under both the Federal Arbitration Act (9 USC § 10 [a] [4]) and our state law (CPLR 7511 [b] [1] [iii]), an arbitration award is subject to vacatur when the arbitrator exceeds his or her power, and as the Second Circuit has explained, arbitrators who act in "manifest disregard of the law" have "thereby 'exceeded their powers' " within the meaning of 9 USC § 10 (a) (4) (*Stolt-Nielsen SA v AnimalFeeds Intl. Corp.*, 548 F3d 85, 95 [2008], *revd on other grounds* 559 US 662 [2010]). After all, as Judge Sack astutely observed for the *Stolt-Nielsen SA* panel, "parties do not agree in advance to submit to arbitration that is carried out in manifest disregard

---

1. Our decision in *Matter of City of Buffalo (Buffalo Police Benevolent Assn.)* (13 AD3d 1202 [2004]) predates *Wien & Malkin LLP* by several years and has never been cited subsequently on the issue of manifest disregard.

of the law" (*id.*). The United States Supreme Court has consistently assumed the existence of this ground for vacating arbitral awards (*see Stolt-Nielsen SA*, 559 US at 672 n 3), and our Court of Appeals explicitly adopted the manifest disregard standard in a case governed by the Federal Arbitration Act (*see Wien & Malkin LLP*, 6 NY3d at 480-481). Given our High Court's unanimous adoption of the manifest disregard standard under the Federal Arbitration Act in *Wien & Malkin LLP*, we see no reason to reject the manifest disregard standard under the almost identically-worded provision of CPLR 7511 (1) (b) (iii)—particularly given the utility of harmonizing state and federal practice regarding judicial oversight of arbitration proceedings (*see e.g. Matter of Brady v Williams Capital Group, L.P.*, 14 NY3d 459, 466 [2010]).[2]

## II

Plaintiff challenges the subject arbitration award on each of the three foregoing theories. *First*, plaintiff argues that the arbitrator exceeded a specifically enumerated limitation on his power by construing paragraph 9 of the arbitration agreement merely to permit attorney's fees at the arbitrator's discretion. *Second*, citing Labor Law § 198, plaintiff argues that the arbitrator's refusal to award attorney's fees violated New York's strong public policy in favor of attorney's fees for successful wage claimants. And *third*, plaintiff argues that the arbitrator's refusal to award attorney's fees constituted a manifest disregard of the applicable substantive law, i.e., section 198.[3]

## A

■ Initially, we summarily reject plaintiff's claim that the arbitrator's refusal to award attorney's fees violated a specifically enumerated restriction on his power reflected in the

---

**2.** Notably, defendant does not challenge the viability of "manifest disregard" as a ground for vacating an arbitral award under CPLR 7511.

**3.** Plaintiff also challenges, on public policy and manifest disregard grounds, the arbitrator's refusal to grant pre-award interest. It is well established, however, that an arbitrator's refusal to grant such interest—even in contract disputes where prejudgment interest is normally mandatory (*see* CPLR 5001 [a])—is not itself a sufficient basis for upsetting an arbitration award (*see Matter of Levin & Glasser, P.C. v Kenmore Prop., LLC*, 70 AD3d 443, 444 [2010]; *Matter of Rothermel [Fidelity & Guar. Ins. Underwriters]*, 280 AD2d 862, 862 [2001]; *Matter of Gruberg [Cortell Group]*, 143 AD2d 39, 39 [1988]; *Matter of Penco Fabrics [Louis Bogopulsky, Inc.]*, 1 AD2d 659, 659 [1955]). Our analysis will thus focus on the thornier question of attorney's fees.

arbitration agreement. To the contrary, the subject arbitration agreement explicitly and unambiguously grants the arbitrator unfettered discretion to award or withhold attorney's fees in the event that plaintiff prevailed on his Labor Law article 6 wage claim. The arbitrator acted consistently with the discretion afforded him by the parties. To the extent that plaintiff relies upon parol evidence in the form of pre-arbitration emails to contradict this unambiguous provision of the arbitration agreement, he does so impermissibly (*see Greenfield v Philles Records*, 98 NY2d 562, 569-570 [2002]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]).

## B

Plaintiff's public policy and manifest disregard arguments require more probing analysis, however, for they transcend the literal words of the parties' arbitration agreement (*see generally Weiner v Diebold Group*, 173 AD2d 166, 167 [1991] ["While the parties to a contract are free to make any bargain they wish and are held to bargains made by them with their eyes open . . . , they are not free to enter into contracts which violate public policy"]). Had the subject arbitration agreement been silent on the subject of attorney's fees, we would have little difficulty in concluding that the arbitrator's refusal to award the attorney's fees required by Labor Law § 198 contravened public policy and constituted a manifest disregard of the law (*see DeGaetano v Smith Barney, Inc.*, 983 F Supp 459, 462-469 [1997] [so holding]). But the subject arbitration agreement is not silent on the question of attorney's fees; in paragraph 9, plaintiff explicitly waived his right to the attorney's fees provided by section 198. Plaintiff's public policy and manifest disregard theories thus necessarily hinge on the validity of his waiver of his statutory right to attorney's fees (*see id.* at 464).

Here, briefly, is why. If public policy permits a wage claimant to waive his or her right to attorney's fees under Labor Law § 198, then an arbitrator cannot possibly violate public policy by exercising the discretion validly conferred by virtue of such a waiver. In that event, there is no "*explicit* conflict" between the arbitrator's award and a statutory provision rendered inoperative by waiver (*New York State Correctional Officers & Police Benevolent Assn.*, 94 NY2d at 327). A valid waiver of the right to attorney's fees under Labor Law § 198 would likewise foreclose plaintiff's manifest disregard theory. An arbitrator,

after all, cannot have manifestly disregarded a statutory right that was validly waived. As Judge Barkett observed in *Montes v Shearson Lehman Bros., Inc.* (128 F3d 1456 [1997]), the manifest disregard rule operates "in the *absence* of a valid and legal agreement" to depart from the substantive laws governing a particular claim (*id.* at 1459 [emphasis added]). Our task thus distills to determining whether someone in plaintiff's position may ever waive their right to attorney's fees under section 198, and, if so, whether this plaintiff validly waived that right under the particular circumstances of this case.

i

We turn first to the question of waivability. In evaluating the waivability of statutory attorney's fees under Labor Law § 198, we are mindful both of our State's "long standing policy against the forfeiture of earned wages" (*Weiner*, 173 AD2d at 167), and of the critical role that attorney's fees play in ensuring a wage claimant's ability to meaningfully vindicate that long-standing policy (*see P & L Group v Garfinkel*, 150 AD2d 663, 664 [1989] [section 198 "reflect(s) a strong legislative policy aimed at protecting an employee's right to wages earned"]). In fact, wage claims often involve relatively small sums, and the legislature's guarantee of statutory attorney's fees to the successful claimant offers the bar a powerful financial incentive to undertake wage theft cases (*see generally Riverside v Rivera*, 477 US 561, 576-578 [1986] [discussing underlying rationale for statutory attorney's fees in civil rights cases]).

But the importance of a right does not control its waivability. "Indeed, most rights and privileges are waivable" in appropriate circumstances (*Green v Montgomery*, 95 NY2d 693, 699 [2001]). "A custodial parent's right to collect child support payments," for example, "is subject to waiver, both express and implied" (*Matter of Dox v Tynon*, 90 NY2d 166, 174 [1997]). Parties to a contract may waive the full statute of limitations and agree to a shorter period in which an assumpsit action must be commenced (*see John J. Kassner & Co. v City of New York*, 46 NY2d 544, 550-551 [1979]). A municipality may, in certain instances, surrender its statutory prerogative to appoint any one of the three highest-scoring candidates on a civil service exam (*see Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364, 373-377 [1997]). A criminal defendant may waive his or her right to appeal (*see People v Seaberg*, 74 NY2d 1, 5 [1989]). One court even permit-

ted a capital defendant to waive his right to present the mitigating evidence necessary to save his own life (*see People v Lavalle*, 181 Misc 2d 916, 918 [1999]).

█ Against that backdrop, we can identify no per se impediment to a wage claimant's waiver of his or her right to the attorney's fees provided by Labor Law § 198. Most importantly, nothing in the State Constitution, Labor Law, or decisional law explicitly bars a wage claimant from waiving his or her right to statutory attorney's fees under section 198. The legislature has, in contrast, explicitly prohibited the waiver of the reciprocal right to attorney's fees in landlord-tenant cases (*see* Real Property Law § 234). The legislature's decision to bar a party from surrendering their right to statutory attorney's fees in one circumstance, but not in another, is strong evidence that the legislature would not find a waiver inimical to public policy in the latter circumstance (*see generally Matter of McDermott v Berolzheimer*, 210 AD2d 559, 559-560 [1994]). And given that the right to attorney's fees is necessarily personal to the wage claimant, this particular waiver will not undermine the statutory protections afforded other wage claimants, the general public, or individuals not party to the arbitration agreement through which this plaintiff waived his right to section 198 attorney's fees (*compare Matter of Consolidated Rail Corp. v Hudacs*, 223 AD2d 289, 293 [1996], *affd* 90 NY2d 958 [1997]). We therefore hold that, "[l]ike [almost] any other provision of law," a wage claimant may waive his right to attorney's fees under section 198 (*O'Brien v Lodi*, 246 NY 46, 50 [1927]). Our conclusion on this score is consistent with *Kamat v Prakash* (420 SW3d 890, 910-911 [Tex App 2014]), in which a Texas appellate court permitted an employee to waive her right to attorney's fees under the federal Fair Labor Standards Act.[4]

ii

Waivable rights, of course, are not waived validly in every instance (*see e.g. Kessler v Kessler*, 33 AD3d 42, 47-50 [2006], *lv dismissed* 8 NY3d 968 [2007] [statutory right to seek attorney's fees in matrimonial matters held waivable, but not validly waived under circumstances of that case]). That is particularly so when a party purports to waive their right to statutory attorney's fees as part of an arbitration agreement. Indeed, several courts, relying upon the particular circumstances pre-

---

4. The Fair Labor Standards Act, like article 6 of the Labor Law, protects an employee's right to wages earned.

sented, have voided provisions in arbitration agreements that waive a party's statutory right to attorney's fees. Three cases are particularly instructive.

In *DeGaetano* (983 F Supp 459), Judge Cote in the Southern District declined to enforce an employee's prospective waiver of her right to statutory attorney's fees because the waiver was contained within an arbitration agreement that the employer made a condition of employment. Judge Cote held that such a provision, when invoked to bar the employee's right to attorney's fees under the federal employment discrimination laws, violated public policy because it prevented the employee from effectively vindicating her statutory cause of action in the arbitral forum (*see id.* at 464-469).

The Supreme Court of Washington State invalidated a similar provision in which an employee, as a condition of employment, agreed to arbitrate disputes with his employer and waive any right to attorney's fees he might otherwise have during the arbitration proceedings. The employee's waiver of his right to attorney's fees in connection with the arbitration agreement, wrote the court, was "substantively unconscionable" and therefore unenforceable (*Adler v Fred Lind Manor*, 153 Wash 2d 331, 355, 103 P3d 773, 786 [2004]).

And in a somewhat different context, the First Circuit in *Kristian v Comcast Corp.* (446 F3d 25 [2006]) effectively voided an adhesive agreement entered into by a class of Comcast customers which waived their right to statutory attorney's fees in, among other things, antitrust cases. Given the astronomical cost of litigating antitrust claims and the "minor amount an individual plaintiff would likely recover relative to the cost of prosecution," the *Kristian* panel held that this waiver, which was embedded within a customer's blanket agreement to arbitrate all disputes with Comcast, operated to prevent cable subscribers from vindicating their statutory antitrust rights (*id.* at 52).

We have no quarrel whatsoever with the holdings of these and similar cases. Whether based on the *Gilmer/Mitsubishi* doctrine,[5] generic public policy concerns, or unconscionability principles derived from contract law, all of the foregoing cases

---

**5.** The *Gilmer/Mitsubishi* doctrine bars arbitration of statutory causes of action if the specific terms of the arbitration agreement would prevent the plaintiff from "effectively vindicating" his cause of action in the arbitral forum (*Gilmer v Interstate/Johnson Lane Corp.*, 500 US 20 [1991]; *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.*, 473 US 614 [1985]). Our Court

involve attorney's-fee waivers executed prospectively by individuals with no real ability to insist upon their rights. The power imbalance was so acute, the compulsion so palpable, and the unfairness so rank, that no fair-minded jurist could think it appropriate to enforce a waiver of important statutory rights under those circumstances.

██ But this case is different. The real parties in interest here are brothers. The arbitration agreement—along with its waiver of plaintiff's right to attorney's fees should he prevail on his wage claim—was executed retrospectively, i.e., with respect to a claim that had already accrued and was already the subject of litigation in Supreme Court. Plaintiff could have simply continued litigating in Supreme Court, and, had he prevailed, he would have been entitled to the attorney's fees that he was denied in arbitration (*see e.g. Polyfusion Elecs., Inc. v Promark Elecs., Inc.*, 108 AD3d 1186, 1187 [2013]; *Zeman v Falconer Elecs., Inc.*, 55 AD3d 1240, 1241-1242 [2008]).

Plaintiff did not continue with litigation, however. Instead, he elected to bargain away his right to attorney's fees in exchange for the simplicity, informality, and reduced expense of arbitration, together with an opportunity to request attorney's fees at the arbitrator's discretion. He might now regret that bargain, but it was his to make. He was not coerced into waiving his rights by the exigencies of his situation, nor did he labor under a power imbalance that made negotiation an exercise in futility. Having voluntarily exchanged his statutory right to attorney's fees for the expeditious and informal procedures of arbitration, plaintiff cannot avail himself of those expedited procedures and then run to court to recover the very thing that he tendered in exchange for those expedited procedures. Plaintiff, in short, cannot have his cake and eat it too.

## Conclusion

Plaintiff validly waived his right to the attorney's fees afforded by Labor Law § 198. He therefore cannot prevail on his present claim that the arbitrator violated public policy and manifestly disregarded the law by exercising the very discretion validly conferred by the arbitration agreement. It follows that Supreme Court properly denied plaintiff's motion to vacate

of Appeals has repeatedly recognized and applied the *Gilmer/Mitsubishi* doctrine (*see Brady*, 14 NY3d at 466-467; *Fletcher v Kidder, Peabody & Co.*, 81 NY2d 623, 648 [1993], *cert denied* 510 US 993 [1993]).

or modify the arbitration award. Accordingly, the order appealed from should be affirmed.

CARNI, J.P., LINDLEY and CURRAN, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.