Kessler v Wollmuth Maher & Deutsch LLP (2023 NY Slip Op 50720(U))

[*1]

Kessler v Wollmuth Maher & Deutsch LLP

2023 NY Slip Op 50720(U)

Decided on July 14, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 14, 2023
Supreme Court, New York County

Frederick R. Kessler, Plaintiff,

against
Wollmuth Maher & Deutsch LLP, David H. Wollmuth, 
 William A. Maher, Rory M. Deutsch, Paul R. Defilippo, Defendant.

Index No. 651790/2021

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 68, 71, 73, 74, 75, 77 were read on this motion to/for VACATE - DECISION/ORDER/JUDGMENT/AWARD.
Upon the foregoing documents, it is ordered that the petition to vacate the arbitration award is denied. Petitioner Frederick Kessler seeks to vacate the entry of a Final Arbitration Award dated December 16, 2020, rendered in an arbitration before James Catterson of the American Arbitration Association. Petitioner argues that the arbitral decision was marred by profound errors violative of New York public policy. Defendants oppose.
The arbitrator decided that petitioner was not entitled to the return of his capital account pursuant to the fifth cause of action. The arbitrator denied prejudgment interest on the damages awarded for respondents' breach of their partnership agreement in failing to pay the petitioner for his percentage interest in Wollmuth Maher & Deutsch LLP's income through March 31, 2018, and damages for the hours-billed portion of the quantum meruit claim related to subsequent work. The arbitrator denied damages for breaches of the WMD partnership agreement in failing to pay his percentage interests received while he was a partner from September 1, 2014 to March 31, 2018. Finally, the arbitrator denied the demand for a declaration that WMD must account to petitioner for payments received after he withdrew. Petitioner submits that these denials were [*2]arbitrary and not supported by the evidence presented during the hearing.
Pursuant to CPLR §7511(b)(1)(iii), an arbitral award shall be vacated if the court determines that the arbitrator "exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made" and rights were prejudiced as a result. An excess of power occurs where "an arbitrator's award violates a strong public policy, is totally irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (Murray v Cornette, 19 Misc 3d 1120(A), at *2 [Sup Ct NY Co 2008]). An arbitrator will be found to have exceeded his power where the final award "does not dispose of a particular issue raised by the parties or if it leaves the parties unable to determine their rights and obligations, if it does not resolve the controversy submitted or if it creates a new controversy" (Andrews v County of Rockland, 120 AD3d 1227, 1228 [2d Dept 2014]). "The scope of judicial review of an arbitration proceeding is extremely limited" (Elul Diamonds Co. Ltd. v Z Kor Diamonds, Inc., 50 AD3d 293 [1st Dept 2008]). When determining whether to vacate an arbitration award, courts are "obligated to give deference to the decision of the arbitrator" (id.).
A. The Return of the Capital Account
Petitioner argues that the arbitrator's finding that Kessler was not entitled to the return of his capital account in the amount of $183,540 was irrational, unsupported by testimony in the arbitration, and contravened New York public policy. Pursuant to the Uniform Partnership Act §40, "absent an agreement to the contrary, a withdrawing partner is entitled to the return of his capital." During the arbitration, petitioner submitted the partnership agreement, which did not expressly provide for WMD to retain Kessler's contributions in his capital account. Kessler further provided uncontradicted expert testimony that retention and reallocation of such accounts is not common practice. The arbitrator's order indicated that WMD's "argument that Kessler is not entitled to a return of his capital account is premised on language that is not present in the Agreement" but then held he is not entitled to its return. Petitioner submits that such a finding is clearly contradictory and irrational.
Respondents argue that Justice Catterson's ruling was not so devoid of proof that it requires overturn. Indeed, his reasoning is thorough and detailed in the ruling. The First Department has held that "unless there is no proof whatsoever to justify the award so as to render it entirely irrational . . . the arbitrator's finding is not subject to judicial oversight" (Peckerman v D&D Assocs., 165 AD2d 289, 296 [1st Dept 1991]). Petitioner's arguments thus amount to a challenge to the weight of the evidence, rendered impermissible under CPLR 7511. Respondents are correct: the arbitrator's reasoning is detailed and not devoid of any proof. 
Independently, petitioner submits that the decision is voidable because it contravenes public policy. The New York Court of Appeals previously held as void against public policy a provision in a law firm partnership agreement requiring only withdrawing partners who continued in private practice to pay money back into the firm and permitted the firm to apply the withdrawing partner's capital account otherwise disbursable upon departure to that obligation (Denburg v Parker Chapin Flattau and Klimpl, 82 NY2d 375, 381-382 [1993]). As in Denburg, where the law firm penalized partners entering into competing firms but permitted full disbursal to partners entering public practice, respondents indicated that their partnership agreement's language permitting full disbursal to retiring partners or those exiting practice on the basis of disability while failing to include the same for exiting partners under the age of 60 reflected a preference to retain partners through their prime years of practice. Petitioner thereby argues that such an attempted restriction on competition runs contrary to public policy.
Respondents rely on Hackett v Milbank, Tweed, Hadley & McCloy to indicate that where petitioners have challenged partnership agreements as anti-competitive, public policy favors deference to the arbitral decision (86 NY2d 148, 149-50 [1995]). To vacate an arbitral award, a violation of public policy must be apparent from the face of the award itself (id. at 156). Appellate courts in this context have emphasized the heavy burden petitioners looking to vacate arbitral awards must overcome "because questions of law and fact are merged in the award and are not within the power of the judiciary to resolve" (Fishman v Roxanne Mgt., 24 AD3d 365, 366 [1st Dept 2005]). Moreover, respondents distinguish the instant case from Denburg in that the Denburg court made much of the anti-competitive motives within a context where Denburg sought to practice law at another firm. Here, Mr. Kessler wholly departed from the practice of law to enjoy private life. Moreover, where the Denburg agreement differentiated between post-departure forms of employment, here the partnership agreement would equally impact a withdrawing partner who changed careers, left the law, or went to a competing firm. Accordingly, respondents argue no such violation of public policy is apparent on the face of the award and petitioner's motion must be denied. Respondents are correct; Denburg may be distinguished, and the award does not run contrary to public policy from the face of the award.
B. Prejudgment Interest
Petitioner argues that the finding that Mr. Kessler was not entitled to prejudgment interest while also finding respondents to be in breach under the partnership agreement was patently irrational and against the public policy of the state. First, petitioner points to CPLR 5001(a)-(b)'s mandate that prejudgment interest be awarded. Petitioner argues that the arbitrator's reasoning was insufficient, relying solely upon the arbitrator's discretionary powers and not indicating a substantive reason for the denial. The arbitrator's decision to not award such interest was therefore irrational and against public policy reflected in the state's statutes.
Respondents argue that the denial of prejudgment interest is not irrational and squarely within the province of the arbitrator's powers. The AAA rules governing the arbitration permit the arbitrator's discretion when awarding interest. Even where prejudgment interest may be the usual course, an arbitrator's refusal to grant such interest is not grounds for overturn (Schiferle v Capital Fence Co., 155 AD3d 122, 128 n.3 [4th Dept 2017]). Given Schiferle's analysis, this Court will not overturn the arbitrator's decision made squarely within his authority.
C. Payment on Contingency Matters
Petitioner's first two causes of action for breach of contract sought a greater share of contingency fee earnings received by the firm, contingency fee income received since his withdrawal, and a share of future contingency fees. Petitioner submits that the arbitrator disregarded Section 5.2 of the partnership agreement, rendering the award irrational and imperfectly executed. The 2014 Partnership agreement, later modified in 2015 to adjust respective percentages, provided for the payment of an assigned share percentage of the base amount to each partner. The base amount was defined as "[a]ll amounts necessary to recover the billable time and expenses on previous unsuccessful contingency matters originated by the Originating Partner plus an amount equal to two times the billable time and expenses with respect to the approved contingency matter."
Petitioner thus submits that the firm was required to pay his percentage interest of the base amount on recoveries in matters that were successful before he withdrew and was entitled to his percentage of the base amount of contingency fee matters between September 1, 2014 and March 31, 2018. The arbitrator relied upon Section 6.5(a) of the partnership agreement for the [*3]proposition that the partnership agreement does not permit a partner to receive any amounts, including future contingency fees, following departure from the firm. Petitioner submits that his decision is thus fatally flawed because it impermissibly renders Section 5.2 a nullity and thus cannot constitute a final decision. "A court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect" (Ruttenberg v Davidge Data Systems, 215 AD2d 191, 197 [1st Dept 1995]).
Respondents, by contrast, point to the arbitrator's reasoning that Section 6.5 governs partners' rights to distributions upon departure and is not modified by Section 5.2. Section 6.5 requires distribution of any fees and income within 60 days of a partner's departure. Under petitioner's theory, Kessler would be entitled to income from the firm over years when fees from cases he worked on would be received upon the conclusion of the action, which does not square with the plain language of Section 6.5. Petitioner provided no parol evidence to contradict the firm's testimony regarding the intent of the provision. Respondents are correct: the arbitrator's reasoning is detailed, rational, and does not run contrary to canons of contractual interpretation.
D. 2015 and 2016 Payments
Next, petitioner submits that the arbitrator failed to analyze Kessler's third cause of action for respondents' alleged breach of Section 5.2 in denying Kessler the remainder of his guaranteed payments for 2015-2016. That section directs that "so long as the firm's net income annually is $5 million or more, Kessler shall receive, notwithstanding what he would otherwise get on hourly matters a minimum of $1 million composed of three buckets: distributions, pension contributions and 401(k) profit sharing contributions" for the 2015, 2016, and 2017 fiscal years." Kessler presented evidence that in 2015 and 2016 the firm's income exceeded $5 million and he was owed $19,519 and $24,509 respectively. According to the petitioner, the arbitrator's lack of analysis on this issue renders the decision incomplete and subject to overturn (Wolff & Munier, Inc v Diesel Const Co, 41 AD2d 618, 618 [1st Dept 1973]).
Respondents argue that they presented contrary evidence evidencing Kessler's agreement that certain HSA and insurance premiums would count toward the $1 million requirement, supporting a finding of waiver or estoppel. Respondents further argue that Justice Catterson specifically identified and resolved each of the causes of action and was not required to expound at length as to his reasoning (Leeward Construction Co, Ltd. v American University of Antigua-College of Medicine, 826 F.3d 634, 640 [2d Cir. 2016])("We agree with our sister Circuits, and hold today that a reasoned award is something more than a line or two of unexplained conclusions, but something less than full findings of fact and conclusions of law on each issue raised before the panel. A reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it"). Respondents are correct. Petitioner cannot show that the award left "the parties unable to determine their rights and obligations" nor did it fail "resolve the controversy submitted or create[e] a new controversy" (Matter of Meisels v Uhr, 79 NY2d 526, 536 [1992]).
E. Breach of Fiduciary Duty
Petitioner argues that the arbitrator's denial of Kessler's breach of fiduciary duty did not address the claim and ignored controlling precedent. The arbitrator's award references the cause of action and then summarily dismisses it in the overall award without reasoned analysis. Kessler's fiduciary duty claim was based on the respondent's failure to pay Kessler amounts under the partnership agreement thereby enriching themselves and failing to give Kessler documents reflecting WMD's financial status. Such self-dealing breaches the reciprocal [*4]fiduciary duties of partners; while "the term 'fair share' can impart discretion to a management committee this creation should be exercised in light of the obligation to deal fairly and equitably with a partner" (Smith v Brown & Jones, 633 NYS2d 436, 441 [Sup Ct NY Co, 1995). By decreasing Kessler's percentage share from 20% to 15% to 5% from 2015-2017, the partners increased their respective shares at his expense and, according to petitioner, in violation of their duties. Moreover, petitioner adds that pursuant to Partnership Law §42 and the Revised Uniform Partnership Act §403 the partners were required to turn over all information pertinent to the firm's finances. Respondents repeatedly refused to turn over such records. Petitioner therefore seeks attorney's fees.
Respondents argue that the arbitrator's ruling disposed of the alternative cause of action in his conclusion that nearly all of petitioner's claims sounding in contract were barred by the partnership agreement, thereby necessarily disposing of the fiduciary duty claim. Respondents further take issue with petitioner's request for attorney's fees, arguing that such a decision is not subject to review on this motion. Respondents are correct. Petitioner fails to demonstrate such patent irrationality as to warrant dismissal, and the arbitrator did dispose of the claim. Review of attorney's fees is also not proper here.
F. Quantum Meruit
Petitioner argues that the arbitrator failed to analyze the quantum meruit claim, rendering the final award so imperfectly executed that a final determination was never made. Petitioner's seventh cause of action asserted a quantum meruit claim seeking $33,000 for the value of time spent on behalf of firm clients following his withdrawal plus $85,000 for the reasonable value of his transitioning business to the firm on which the firm collected fees.
Respondents presented testimony that the firm was not obligated to pay Petitioner for transitioning existing clients of the Firm because Kessler was required to do so prior to his departure and because Kessler rejected their offer to compensate him for work if he continued in a Senior Counsel role. The arbitrator's denial of the costs incurred post-withdrawal was not irrational and he rendered judgment on it by awarding a portion of the $33,000 demand while rejecting all else.
Accordingly, it is hereby
ORDERED and ADJUDGED that Frederick Kessler's petition to vacate the award is denied and the petition is dismissed; and it is further
ORDERED and ADJUDGED that, pursuant to CPLR 7511, the award is confirmed.
7/14/2023